UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CONNIE JONES, as Special Administrator of the Estate of KENNETH EUGENE JONES, <br><br> Plaintiff, <br><br> v. <br><br> HOOSIER ENERGY RURAL ELECTRIC COOPERATIVE, INC., <br><br> Defendant. | No. 2:18-cv-00443-JRS-DLP |

**Entry on Defendant's Motion for Summary Judgment
(ECF No. 52)**

Defendant Hoosier Energy Rural Electric Cooperative, Inc. (Hoosier Energy) moves for summary judgment on Plaintiff Connie Jones's wrongful death claim—her sole remaining claim—arguing there is not enough evidence for a reasonable jury to find that Hoosier Energy's negligence caused her husband's death. (*See* Def.'s Br. Supp. Mot. Summ. J., ECF No. 53.) Hoosier Energy's motion, now fully briefed, should be **granted in part** and **denied in part** for the following reasons.

**Legal Standard**

"A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). In considering a motion for summary judgment, the district court "must construe all the facts and

reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017). However, the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), and does not draw "inferences that are supported by only speculation or conjecture," *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Here, the parties do not dispute the relevant facts; they dispute the inferences a reasonable jury could draw from those facts.

## Background

Plaintiff's late husband, Mr. Kenneth E. Jones, worked as a field services representative for GE Betz, Inc. (which is no longer a party to this action) for ten years. (ECF No. 52-1.) Hoosier Energy contracted GE Betz for water treatment services at its Merom Generating Station, where Mr. Jones worked on temporary assignment. (Compl. ¶ 6, ECF No. 1-1; Harrison Aff. ¶¶ 4–5, ECF No. 52-2.)

GE Betz's water treatment services included cleaning the condenser tubes by circulating "rockets" (small plastic balls with skirts attached) through the condensers, which release into a hot-water discharge canal. (Harrison Aff. ¶¶ 7–8.) The canal runs 1.25 miles from the generating station and terminates at a waterfall emptying into Turtle Creek Reservoir. (*Id.* ¶ 8; Landis Aff. ¶ 6, ECF No. 52-5.)

To prevent the rockets from spilling into the reservoir, GE Betz placed a "boom" system of netting in the canal that funnels the rockets into a submerged cage for collection. (Landis Aff. ¶ 9.) A metal bridge and platform span the canal a few yards downstream of the boom, allowing GE Betz's workers to maintain the structures and

2

retrieve the rockets.  (*Id.*)  Mr. Jones performed this work, requiring him to perform various duties from the bridge.  (ECF No. 52-1.)

On September 12, 2016, Mr. Jones was working alone for GE Betz at the Merom Generating Station.  (Landis Aff. ¶ 2, ECF No. 52-5.)  In the morning, he stopped by the office of Hoosier Energy employee Tommy Harrison and joked about fishing.  (Harrison Aff. ¶, ECF No. 52-2.)  A motion-activated camera captured an image of Mr. Jones by his truck near the canal at 10:23 a.m.  (Foli Aff. ¶ 5, ECF No. 52-3.)  At 8:32 p.m., Indiana Department of Natural Resources (IDNR) officers found Mr. Jones's body floating in the Turtle Creek Reservoir, more than 700 yards from the waterfall separating the canal and the reservoir.  (*Id.* ¶ 6.)  In the area where the body was recovered, the water was "extremely warm," an estimated 95 degrees, (Landis Aff. ¶ 7), and the water in the canal was approximately 115 degrees, (Pl.'s Ex. A at 7, ECF No. 60-1; Pl.'s Ex. C, ECF No. 62).

Mr. Jones's wallet and keys were found atop the canal wall, two hundred yards downstream of the bridge, (Landis Aff. ¶ 10), and nearly a mile (an estimated 5,149 feet) upstream of the waterfall into the reservoir, (Pl.'s Ex. A at 5, ECF No. 60-1).  Mr. Jones's life jacket—still buckled—was found in the reservoir near the waterfall.  (Pl.'s Ex. A at 2, ECF No. 60-1.)  The rocket-collecting cage was missing from the funnel area of the boom.  (*Id.* at 2–3.)

The Sullivan County Coroner determined that Mr. Jones's cause of death was hyperthermia and drowning and his manner of death was accidental.  (Dudley Aff. ¶¶ 6,

8.) The autopsy revealed that Mr. Jones's blood alcohol content was 0.032 percent. (*Id.* ¶ 7.)

**Discussion**

As the Court previously determined, the substantive law of Indiana applies in this diversity case. (*See* ECF No. 41 at 3.) To survive summary judgment, Plaintiff must present enough evidence for a reasonable jury to conclude that (1) Hoosier Energy owed Mr. Jones a duty, (2) it breached that duty, and (3) that breach proximately caused Mr. Jones's injuries. *See Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999). Hoosier Energy contends that Plaintiff lacks evidence of the third element, causation. (As Hoosier Energy does not address the elements of duty or breach, the Court assumes, without deciding, that such elements are met.)

In Indiana negligence law, proximate cause consists of causation-in-fact—whether the injury would have occurred but for the breach—and scope of liability—whether the injury is a foreseeable, "natural and probable consequence" of the breach. *City of Gary ex rel. King v. Smith*, 801 N.E.2d 1222, 1243–44 (Ind. 2003). Summary judgment is "rarely appropriate" in negligence cases, *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004), as "both of those inquiries are ordinarily for the jury," but "'where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law,'" *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008) (quoting *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917 (Ind. Ct. App. 2001)).

A jury may not find causation based on speculation or conjecture; it may only make reasonable, evidence-based inferences. *Trask-Morton*, 534 F.3d at 678 (quoting *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000)). In *Trask-Morton*, the plaintiff alleged that, while staying in a Motel 6, she had been sexually assaulted due to the motel's negligence. *Id.* at 674. But the plaintiff had no memory of the evening, the windows to her room were sealed, the motel's electronic key-lock system showed that no key other than the plaintiff's had been used to open her door that evening, and there was no medical evidence suggesting sexual assault. *Id.* at 674, 679–80. The Seventh Circuit, applying Indiana law, held that summary judgment for the motel was warranted because of the "complete lack of evidence connecting her generalized evidence of high crime and shoddy security at the motel" to the alleged assault. *Id.* at 678.

Even where the injury is undisputed, summary judgment is appropriate where the only evidence of causation is the mere fact of injury. In slip-and-fall cases, for example, Indiana courts of appeals have uniformly held that summary judgment is proper where the plaintiff's only evidence of a hazardous condition is the fact of the fall. *See, e.g., Taylor v. Cmty. Hosp. of Ind., Inc.*, 949 N.E.2d 361, 363 (Ind. Ct. App. 2011) (affirming summary judgment where the plaintiff "assumed that there had to be something there because she was walking and then she was on the floor" and witness on the scene immediately after the fall testified that the floor was dry); *Hayden*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000) (affirming summary judgment where the plaintiff presented no evidence "on how or why" he fell); *Midwest Commerce Banking*

5

*Co. v. Livings*, 608 N.E.2d 1010, 1013 (Ind. Ct. App. 1993) (affirming summary judgment where, even if there were a negligent condition, the plaintiff did not present evidence of how the alleged negligence caused the fall).

Though a jury may not find causation based on pure speculation, that is not to say that a negligence plaintiff must present *direct* evidence of causation. "Causation may be proven by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than mere speculation." *Smith v. Beaty*, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994) (quoting *Barrow v. Talbott*, 471 N.E.2d 917, 923 n.3 (Ind. 1981)). In *Blasius v. Angel Automotive, Inc.*, 839 F.3d 639 (7th Cir. 2016), the plaintiff's truck caught fire, having driven just 200 miles after the defendant replaced fuel and brake lines. A portion of the truck's exhaust was not insulated in the area where the fire damage was worst. *Id.* at 647. The Seventh Circuit, applying Indiana law, reversed summary judgment, holding that a jury could reasonably infer that the fire started when a leak in the fluid lines, caused by the defendant's deficient replacement work, hit the uninsulated portion of the exhaust system. *Id.* at 649.

Here, Plaintiff contends that Mr. Jones entered the canal due to some breach of a duty owed to him by Hoosier Energy, pointing principally to the conditions of the bridge. But there is scant evidence of where, how, or why Mr. Jones entered the canal. There were neither witnesses nor security camera footage. Mr. Jones's truck was found parked near the bridge; his wallet and keys were found on the canal wall, 200 yards downstream from the bridge; his body was found, mostly clothed, 700 yards

6

from the waterfall; his life jacket was found in the reservoir near the waterfall; the rocket-collecting cage was missing from beneath the bridge; Mr. Jones joked with a Hoosier Energy employee about fishing that morning (perhaps a reference to retrieving the missing collection cage); and IDNR officers found no disturbances in the algae on the canal walls suggesting an entry point. A jury could only speculate whether Mr. Jones entered the water from the bridge or somewhere downstream and whether he entered inadvertently or to retrieve the cage or even on a lark. Like *Hayden* and *Midwest Commerce Banking*, there is no evidence of how or why Mr. Jones entered the canal. Hoosier Energy is therefore entitled to summary judgment on Plaintiff's claims arising from Mr. Jones's initial entry into the canal and the conditions of the bridge. This conclusion is only bolstered by Plaintiff's chief evidence of deficiency in the bridge's conditions—an Indiana Department of Labor citation issued to GE Betz, *not* Hoosier Energy, for lack of safety equipment on the bridge, indicating that Hoosier Energy did not control the conditions of the bridge. *See Kincade v. MAC Corp.*, 773 N.E.2d 909, 912 (Ind. Ct. App. 2002) (affirming summary judgment where the plaintiff slipped on stairs leading to a trash compactor because the defendants, who manufactured and installed the trash compactor, did not manufacture or install the stairs).

The doctrine of *res ipsa loquitur* does not save Plaintiff's claim arising from Mr. Jones's initial entry into the water. *Res ipsa loquitur* applies only where the plaintiff establishes "(1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants, and (2) that the accident is of the

7

type that does not ordinarily happen if those who have the management and control exercise proper care." *Rector v. Oliver*, 809 N.E.2d 887, 890 (Ind. Ct. App. 2004). Neither condition is met here. First, Plaintiff's own evidence—the Department of Labor citation—indicates that GE Betz, not Hoosier Energy, had control of the relevant conditions of the bridge. Second, a fall is not an accident "of the type that does not ordinarily happen" absent negligence. To the contrary, "[f]alling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go." *Ogden Estate v. Decatur Cty. Hosp.*, 509 N.E. 2d 901, 903 (Ind. Ct. App. 1987).

Nevertheless, Plaintiff's case does not rest solely on Mr. Jones's initial entry into the water. Plaintiff also contends that Mr. Jones remained in the canal after entry— long enough to suffer hyperthermia and drown—due to the canal's steep, algae-covered walls and the lack of any structure to allow exit from the canal. Though a jury would have to resort to speculation to determine where, how, or why Mr. Jones entered the canal, a jury would not need to speculate to find that Mr. Jones did, in fact, enter the canal and that the canal's hot water—and perhaps the waterfall—caused his hyperthermia, drowning, and death. Here, the case differs from *Trask-Morton*, where the absence of evidence that any assault occurred precluded an inference of causation. *See* 534 F.3d at 676 (holding that without "facts to support [the plaintiff's] allegation that an assault occurred in the first place," the plaintiff "could not connect the injuries she alleged occurred as the result of the assault to any breach of duty by Motel 6."). Nor would a jury need to speculate to find that the discharge canal had steep, algae-covered, concrete walls and lacked any structure downstream to allow

8

exit from the canal.[1]  On this point, the case again differs from *Trask-Morton*, where the evidence undermined any inference of a dangerous condition, as the windows were sealed and no other key was used to enter the plaintiff's door. *Id.* at 679–80.  It likewise differs from *Hayden* and *Midwest Commerce Banking* where, in each instance, there was no evidence of a dangerous condition other than the mere fact of the plaintiff's slip.  Finally, from the designated evidence, a reasonable jury could (but need not) infer that Mr. Jones's death would not have occurred "but for" the canal's hot water, together with its steep, algae-covered, concrete walls and the absence of any means of egress, and that—once in the water—his death was a natural and probable consequence of those conditions.  Hoosier Energy therefore has not shown that it is entitled to summary judgment on Plaintiff's claim arising from the conditions of the canal and Mr. Jones's remaining in the water.

## Conclusion

For the reasons explained above, Hoosier Energy's Motion for Summary Judgment (ECF No. 52) is **granted in part** and **denied in part.**  Plaintiff's claim arising from Mr. Jones's initial entry into the water is dismissed, but Plaintiff's claim arising from

---

[1] The evidence supporting these facts is Plaintiff's Exhibit A, Officer Landis's IDNR "Report of Drowning," (ECF No. 60-1).  In its reply, Hoosier Energy objects to Plaintiff's Exhibit A as hearsay.  But Federal Rule of Evidence 803(8) provides an exception to the rule against hearsay for a "record . . . of a public office" if "it sets out: . . . a matter observed while under a legal duty to report . . . or factual findings from a legally authorized investigation[.]"  Fed. R. Evid. 803(8).  On its face, Exhibit A appears to fall into the 803(8) exception.  Hoosier Energy further objects that the report is unauthenticated. The document purports to be an IDNR Report of Drowning recorded on State Form 23388 and filed by Officer Matthew Landis. Officer Landis's affidavit, submitted by Hoosier Energy (ECF No.52-5), indicates that he investigated Mr. Jones's drowning, and his affidavit is consistent with (though far less detailed than) Exhibit A.  Absent some articulable reason to doubt its authenticity, Exhibit A meets the requirements of Rule 901(a) for summary-judgment purposes.  Thus, the Court relies on Exhibit A in its analysis here, except to the extent that Exhibit A contains conjecture and "hearsay within hearsay."

Mr. Jones's remaining in the water (*i.e.*, the conditions of the canal) shall proceed to trial.

**SO ORDERED.**

Date: 7/29/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

H. Kent Heller
HELLER, HOLMES & ASSOCIATES P.C.
kent@hhlawoff.com

Patrick David Murphy
MURPHY RICE, LLP
pmurphy@murphyrice.com

Charles P. Rice
MURPHY RICE, LLP
crice@murphyrice.com